UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10 B 22637 |
| ERIE PLAYCE LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Judge Pamela S. Hollis |

## MEMORANDUM OPINION

On May 18, 2010 ("Filing Date"), Erie Playce LLC ("Erie") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Harris N.A. ("Harris") as assignee from Amcore Bank N.A. ("Amcore"), a secured creditor holding a mortgage on real estate owned by Erie, filed an objection to Erie's Motion to Direct the Receiver to Make Payments to Harris N.A. and Related Relief ("Motion") under 11 U.S.C. § 362(d)(3). The issue before the court is the proper calculation and application of 11 U.S.C. § 362(d)(3)(B)(ii)'s monthly payment, where a prepetition state court judgment was issued, substituting a judgment rate of interest for the interest rate specified by the contract. The court finds in favor of Erie, holding that the judgment rate of interest does not replace the nondefault contract rate of interest for the purposes of § 362(d)(3)(B)(ii).

## FACTS AND BACKGROUND

Erie is a single asset real estate debtor as defined under 11 U.S.C. § 101(51B), owning and operating a four-story commercial building commonly known as 520 West Erie Street, Chicago, Illinois ("Property"). Erie and Harris, as assignee from Amcore, are parties to a promissory note in the original amount of $5,100,000 dated June 14, 2002, as modified to $6,371,081.48 on February 24, 2008. The note indebtedness was secured by a first mortgage

which was duly recorded on June 18, 2002. Harris asserts a claim against Erie of approximately $7.8 million. Although there has been no adjudication of the value of the Property, neither party asserts its value is such as to render Harris oversecured.

In July 2008, Amcore brought an action to foreclose the mortgage in the Circuit Court of Cook County ("State Case"), encaptioned *Amcore Bank N.A. v. Erie Playce LLC and First Midwest Bank et al.* and is numbered 08 CH 29638. As of the Filing Date, that action was still pending. Harris obtained a judgment against Erie in the amount of $7,215,927.44 on July 29, 2008, which carried with it a 9% judgment rate of interest. On July 31, 2009, in the State Case, the Circuit Court appointed a receiver. The receiver was in place as of the Filing Date.

On May 28, 2010, this court entered an order providing that the receiver shall retain possession of prepetition rent and postpetition rent and pay expenses, payment of which is authorized by the court.

On August 5, 2010, Erie filed this Motion pursuant to § 362(d)(3). Erie sought to pay the nondefault contract rate of interest of 5.990%, the interest rate specified in the promissory note between the parties. On August 9, 2010, Harris filed its objection to Erie's motion based upon the proposed nondefault contract rate of interest.

On August 12, 2010, this court granted Erie's Motion, on a provisional basis, to pay Harris a sum directed by Erie in an amount not less than $25,607.25, reflecting the 5.990% interest rate.

## DISCUSSION

Section 362(d)(3) provides that on request of a party in interest and after notice and a hearing, the court shall lift the automatic stay with respect to single asset real estate unless no

2

later than 90 days after the petition date or 30 days after the court has determined the debtor to be subject to this section, whichever is later,

> (A) the debtor has filed a plan of reorganization that has a reasonable probability of being confirmed within a reasonable time; or
> (B) the debtor has commenced monthly payments that . . . (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate[.]

Though the legislative history on § 362(d)(3) is scant, that which does exist and the statute's own structure indicates that Congress desired to incentivize debtors to avoid delays in proposing meritorious plans of reorganization in single asset real estate cases. *In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 49-50 (Bankr. D. Minn. 2007).

### A. Interest Rate

Harris first argues that the appropriate interest rate is 9%, the judgment rate of interest imposed in the State Case. Harris asserts that, because under Illinois law the judgment replaces the contract rendering it unenforceable, the only "applicable" interest rate is the judgment rate.

According to Illinois law, once a judgment is entered based upon an instrument or contract, the instrument merges into the judgment. *Doerr v. Schmitt*, 31 N.E.2d 971, 972 (Ill. 1941). Once merged, it ceases to bind the parties and no further action may be maintained on the instrument. *Id.* "The doctrine of merger is applied to *causes of action* to bar relitigation of the same cause." *Lowrance v. Hacker*, 966 F.2d 1153, 1157 (7th Cir. 1992).

Here, Harris claims that since the nondefault and default rates no longer have any validity, the only possible interest rate to apply is the judgment rate. This argument misinterprets the law of merger and its application to § 362(d)(3)(B)(ii). Erie is not trying to maintain an action on the contract; Erie is attempting to comply with the Bankruptcy Code as written. The nondefault contract rate of interest is simply the metric used by the Bankruptcy Code to

determine the amount of the monthly payments. Despite this conclusion, the court will consider whether the plain language of the Bankruptcy Code requires a different result.

"In construing a federal statute it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses the legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S. Ct. 638, 83 L. Ed. 2d 556 (1985) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985)). When a statute's language is plain, "'the sole function of the courts is to enforce it according to its terms,'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L. Ed. 2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L. Ed. 442 (1917)).

Here the statute's language is clear. It contains no qualifiers or ambiguity and does not afford discretion in its application. When Congress amended the statute in 2005, it could have changed the rate to the "then applicable interest rate under non-bankruptcy law" or even the default contract rate, but it did not. Accordingly, it is appropriate to believe that Congress meant exactly what the statute says and the court must apply the *nondefault contract rate of interest*.

Given that the statute is clear, a judgment interest rate can hardly be construed as a nondefault rate. A judgment interest rate is the quintessence of a default interest rate—an interest rate entered against a debtor as a consequence of *default* under the contract. To apply a judgment rate would run contrary to the plain language of the statute and the intent of Congress.

If the court were to believe Harris's argument that the nondefault contract rate has no continuing validity, all that would remain is a judgment rate of interest. Section 362(d)(3)(B)(i) specifically excludes judgment liens, perhaps indicating an intent to exclude judgment rates of

interest. In that case, Harris would not be entitled to any payments, as there would be no applicable nondefault rate of interest.[1] However, this would lead to an absurd result.

In light of the fact that Erie is not attempting to enforce the contract and that the language of the statute is plain, the interest rate to be applied under § 362(d)(3)(B)(ii) is 5.990%, the original contract rate.

Harris also argues that the value of its claim is $5,150,000 instead of $5,130,000 as set forth in an appraisal Harris provided to Erie. In its reply to Harris's objection, Erie agrees to use $5,150,000 as the amount of Harris's claim for the purpose of the calculation until there is an adjudication of the value of the Property. Therefore, the appropriate payment is $25,707.08.

### B. Application of the Payments

Harris also claims that the monthly payments should not be applied to principal as they are intended to be interest. Harris misconstrues the statute. Section 362(d)(3)(B)(ii) states that the payment is "in an amount equal to interest" not that it is an interest payment. These payments are unique to single asset real estate cases and do not qualify as adequate protection or payments of interest, though some cases fail to make this distinction.[2]

In order for the payments to be applied to interest as Harris asserts, Harris would need to be oversecured. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 382, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (holding that undersecured creditors are not entitled to postpetition interest on their collateral). Bankruptcy scholars agree with this

---

[1] For a similar argument see John B. Butler, *Section 362(d)(3): A Singular Provision of the Bankruptcy Code*, 6 DePaul Bus. & Com. L.J. 205, 219 (Winter 2008) ("An interesting question arises in a situation when the holder of a 'matured' statutory lien does not have a contractual rate of interest, nondefault or otherwise. Seemingly, from the language of the statute, such a creditor would not be entitled to receive interest payments under § 362(d)(3)(B)(ii).").
[2] *See In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *4 (Bankr. S.D.N.Y. May 21, 2010) (referring to the monthly payments as "adequate protection"). For cases describing the payments as interest payments see *Heather Apartments*, 366 B.R. at 50; *In re RIM Dev., LLC*, No. 10-10132, 2010 WL 3259492, at *2, *6 (Bankr. D. Kan. Aug. 13, 2010).

interpretation.[3] By Harris's own valuation, it is undersecured by well over $2 million. Furthermore, there is nothing in the statute or in the legislative history that demands a contrary result.

Because Harris is undersecured, it is not entitled to apply the monthly payments under § 362(d)(3)(B)(ii) to postpetition interest. The payments must be applied to the principal obligation.

## CONCLUSION

For the foregoing reasons, Erie's Motion is granted. Erie may direct the receiver to make monthly payments in an amount equal to $25,707.08 until Erie proposes a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. These payments will be applied to the principal obligation.

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order will be issued pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTER:

_____
Pamela S. Hollis
United States Bankruptcy Judge

Dated this DEC - 7 2010 day of December, 2010.

---

[3] *See* 3 Collier on Bankruptcy ¶ 362.07[5] (15th ed. rev. 2007) (explaining that the language of § 362(d)(3)(B)(ii) "suggests that the payments may be applied to principal rather than interest, which, if the creditor is undersecured, would reduce the obligation with which the debtor must deal in a plan."); Kenneth N. Klee & Brendt C. Butler, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005—Business Bankruptcy Amendments*, 28 Cal. Bankr. J. 270, 310 (2006) ("Application of those monthly payments will depend on whether the creditor is over or undersecured. If the creditor is undersecured, under *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988), the payments should be applied to reduce principal.").

6

## CERTIFICATE OF SERVICE

Case Number: 10 B 22637
Case Name:   In re Erie Playce LLC

I, Steven P. Beckerman, Courtroom Deputy to the Honorable Pamela S. Hollis, do hereby certify that on the 7th day of December 2010, I caused to be served via the Court's Electronic Notification or via First Class Mail (**) a true and correct copy of:

Memorandum Opinion and Order Granting Erie Playce LLC's Motion to Direct the Receiver to Make Payments to Harris N.A. and Related Relief (EOD 72), dated December 7, 2010.

addressed to each of the following named individuals:

| | |
|---|---|
| Erie Playce LLC (**)<br>363 W. Erie St.<br>Chicago, Illinois   60654 | Debtors |
| Paula K. Jacobi<br>Timothy S. McFadden<br>Barnes & Thornburg LLP<br>One North Wacker Drive, Suite 4400<br>Chicago, IL   60606 | Attorneys for Debtors |
| Fred R. Harbecke<br>29 South LaSalle Street<br>Suite 945<br>Chicago, Illinois   60603 | Attorney for Movant |
| James G. Froberg<br>Lowis & Gellen LLP<br>200 West Adams St.<br>Suite 1900<br>Chicago, IL 60606 | Attorney for Amcore Bank |
| John T. Suzuki<br>Principal<br>Collateral Trustee<br>1033 West Van Buren, Seventh Floor<br>Chicago, IL   60607 | Receiver for Debtor |

/s/ Steven P. Beckerman
Steven P. Beckerman
Courtroom Deputy